**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 22-1844

JULIETTE GRIMMETT; RALSTON LAPP GUINN MEDIA GROUP; JOSH STEIN FOR ATTORNEY GENERAL CAMPAIGN; JOSH STEIN; SETH DEARMIN; ERIC STERN,

    Plaintiffs - Appellants,

 v.

N. LORRIN FREEMAN, in her official capacity as District Attorney for the 10th Prosecutorial District of the State of North Carolina,

    Defendant - Appellee,

 and

DAMON CIRCOSTA, in his official capacity as Chair of the North Carolina State Board of Elections; STELLA ANDERSON, in her official capacity as Secretary of the North Carolina State Board of Elections; JEFF CARMON, III, in his official capacity as Member of the North Carolina State Board of Elections; STACY EGGERS, IV, in his official capacity as Member of the North Carolina State Board of Elections; TOMMY TUCKER, in his official capacity as Member of the North Carolina State Board of Elections,

    Defendants.

------------------------------

DUKE FIRST AMENDMENT CLINIC,

    Amicus Supporting Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Catherine C. Eagles, District Judge. (1:22-cv-00568-CCE-JLW)

Argued: December 6, 2022                                    Decided: February 8, 2023

Before DIAZ, RUSHING, and HEYTENS, Circuit Judges.

Vacated and remanded by published opinion. Judge Heytens wrote the opinion, in which Judge Diaz and Judge Rushing joined. Judge Rushing wrote a concurring opinion.

**ARGUED:** Michael R. Dreeben, O'MELVENY & MYERS LLP, Washington, D.C., for Appellants. Joseph Edward Zeszotarski, Jr., GAMMON HOWARD & ZESZOTARSKI, PLLC, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Pressly M. Millen, Raymond M. Bennett, Samuel B. Hartzell, WOMBLE BOND DICKINSON (US) LLP, Raleigh, North Carolina; Meaghan VerGow, Jenya Godina, O'MELVENY & MYERS LLP, Washington, D.C., for Appellants. Sarah Ludington, C. Amanda Martin, DUKE FIRST AMENDMENT CLINIC, Durham, North Carolina; Christopher A. Brook, PATTERSON HARKAVY LLP, Chapel Hill, North Carolina, for Amicus Curiae.

2

TOBY HEYTENS, Circuit Judge:

A 90-year-old North Carolina law makes it a crime to publish a "derogatory report[ ]" about candidates for public office where the speaker "know[s] such report to be false or" acts "in reckless disregard of its truth or falsity." N.C. Gen. Stat. § 163-274(a)(9). Plaintiffs assert this statute violates the First Amendment. The district court denied a preliminary injunction because it determined plaintiffs were unlikely to succeed on the merits. We disagree. Not only have plaintiffs shown a likelihood of success, "it is difficult to imagine them losing." *Alabama Ass'n of Realtors v. Department of Health & Hum. Servs.*, 141 S. Ct. 2485, 2488 (2021). Accordingly, we vacate the district court's order and remand for further proceedings.

I.

In 2020, Josh Stein and Jim O'Neill were vying to serve as North Carolina's attorney general. As part of that contest, plaintiff Josh Stein for Attorney General Campaign hired plaintiff Ralston Lapp Guinn Media Group to produce an ad criticizing O'Neill's handling of untested rape kits. In that ad, plaintiff Juliette Grimmett says:

> As a survivor of sexual assault that means a lot to me and when I learned that Jim O'Neill left 1,500 rape kits on a shelf leaving rapists on the streets, I had to speak out.

JA 19. The ad was broadcast throughout North Carolina.

In September 2020, while the campaign was still underway, a committee supporting O'Neill filed a complaint with the North Carolina State Board of Elections asserting the ad violated Section 163-274(a)(9) of the North Carolina General Statutes. That provision makes it a Class 2 misdemeanor—in other words, a crime:

3

> For any person to publish or cause to be circulated derogatory reports with reference to any candidate in any primary or election, knowing such report to be false or in reckless disregard of its truth or falsity, when such report is calculated or intended to affect the chances of such candidate for nomination or election.

N.C. Gen. Stat. § 163-274(a)(9). We will call this statute "the Act."

As required by North Carolina law, the Board of Elections investigated the claim. Roughly eight months later, the Board issued a final report recommending no charges be filed. Besides expressing doubt about whether an adequate factual predicate existed, the Board was "concerned that if a violation is found, this might be an unconstitutional application of the statute." JA 447.

Dissatisfied with the Board's recommendation, a local district attorney tasked the State Bureau of Investigation to continue looking into the matter. The district attorney requested the investigation about a month after the Board's final report, and it remained unresolved for more than a year.

Almost a year and ten months after the initial complaint, a prosecutor told the Josh Stein for Attorney General Campaign the district attorney planned to present charges to a state grand jury. The next day, plaintiffs filed suit in federal district court, seeking a declaratory judgment that the Act is unconstitutional and to enjoin its enforcement against them. Plaintiffs also requested a temporary restraining order and a preliminary injunction.[1]

---

[1] The original plaintiffs have already been mentioned. After the district court denied a preliminary injunction, plaintiffs filed an amended complaint adding three new plaintiffs.

4

The district court granted a temporary restraining order, concluding "plaintiffs have shown a likelihood of prevailing on the merits of their claim that N.C. Gen. Stat. § 163-274(a)(9) is unconstitutional under the First Amendment." D. Ct. ECF No. 16, at 1. After further briefing and argument, however, the district court vacated the temporary restraining order and denied plaintiffs' motion for a preliminary injunction. Although the court recited the familiar four-factor balancing test from *Winter v. National Resources Defense Council, Inc.*, 555 U.S. 7 (2008), its only stated ground for denying a preliminary injunction was that "plaintiffs are unlikely to succeed on the merits of their constitutional claim." JA 423.[2]

We have jurisdiction to hear plaintiffs' appeal from the district court's order denying their motion for a preliminary injunction under 28 U.S.C. § 1292(a)(1). We review the "denial of a preliminary injunction for abuse of discretion," while reviewing "legal conclusions de novo." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 339 (4th Cir. 2021) (en banc). Here, the district court's order turned on its assessment of what the Act means and whether it is constitutional. Both present legal questions reviewed de novo. See *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991) (courts of appeals "should review *de novo* a district court's determination of state law"). We thus analyze the parties' positions with fresh eyes.

---

[2] In a later order denying plaintiffs' motion for an injunction pending appeal, the district court briefly analyzed the non-merits factors applicable to such motions. That order is not before us. See Fed. R. App. P. 8(a) (providing for a separate motion for an injunction pending appeal rather than an appeal from a district court's denial of such a motion).

II.

We conclude the Act is likely unconstitutional for two reasons. *First*, the Act appears to criminalize at least some truthful statements—a result the First Amendment forbids. *Second*, even if the Act reaches only false statements, it makes impermissible content-based distinctions in selecting which speech to forbid.

A.

The district attorney's defense of the Act's constitutionality rests mainly on *Garrison v. Louisiana*, 379 U.S. 64 (1964). It goes like this: Under *Garrison*, criminal libel statutes are constitutional so long as they apply only to false speech and require proof of actual malice. This Act applies only to false speech made with actual malice. So, the Act is constitutional.

Although plaintiffs challenge both steps of this argument, we need only reach the second one. Whether or not plaintiffs are correct about all of *Garrison*'s implications, we conclude the Act likely criminalizes at least some truthful speech—a step the Constitution forbids. See *Garrison*, 379 U.S. at 74 ("Truth may not be the subject of either civil or criminal sanctions where discussion of public affairs is concerned.").

The statutory text frames the prohibited conduct disjunctively: "[D]erogatory reports" are prohibited when the speaker makes them "knowing such report to be false *or* in reckless disregard of its truth or falsity." N.C. Gen. Stat. § 163-274(a)(9) (emphasis added). We may assume a speaker cannot "know[]" a statement "to be false" unless the statement is false. But by its plain terms this statute also criminalizes truthful derogatory statements so long as the speaker acts "in reckless disregard of [a statement's] truth or

6

falsity." *Id.* That is precisely what *Garrison* holds is unconstitutional. See 379 U.S. at 78 (challenged statute unconstitutional because it "direct[ed] punishment for true statements made with actual malice" (quotation marks omitted)).

Resisting this conclusion, the district attorney asserts the Act's use of the term "derogatory" excludes truthful statements. That argument has multiple problems.

For one thing, the district attorney does not identify—nor have we located—any source suggesting "derogatory" refers exclusively to factually false statements. To the contrary, dictionaries from around the time of the Act's 1931 passage define "derogatory" as "lessening in good repute; detracting from estimation; disparaging"[3] or "disparaging; detracting,"[4] with modern definitions including "expressive of a low opinion," "disparaging," or "detracting from the character or standing of something."[5] And in common usage, there is no reason a statement cannot be both derogatory and true.

To be sure, state—not federal—courts have the last word about what state law means. See generally *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). But the district attorney provides no evidence North Carolina's highest court would construe this statute to mean something other than what it says. Indeed, in a particularly damning blow to the district attorney's position, the Supreme Court of North Carolina has said that an immediately adjacent statutory provision—which, like the Act, uses the term "derogatory"

---

[3] The Practical Standard Dictionary of the English Language 319 (1936).

[4] Webster's New International Dictionary 705 (2d ed. 1934).

[5] *Derogatory*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/derogatory (last visited Jan. 9, 2023) (saved as ECF opinion attachment).

7

and was enacted as part of the same 1931 statute—"clearly" encompasses "truthful statements." *State v. Petersilie*, 432 S.E.2d 832, 842 (N.C. 1993) (discussing what is now N.C. Gen. Stat. § 163-274(8)); see 1931 N.C. Sess. Laws 442. And, like other jurisdictions, North Carolina follows the familiar principle that it is "[o]rdinarily . . . reasonable to presume that words used in one place in [a] statute have the same meaning in every other place in the statute." *Campbell v. First Baptist Church of Durham*, 259 S.E.2d 558, 563 (N.C. 1979).

The district attorney gamely insists North Carolina's highest court would deploy the absurd results or constitutional avoidance canons to save the Act, which—the district attorney emphasizes—contains other language absent from the one at issue in *Petersilie*. We have no way of definitively resolving the district attorney's prediction because "unlike . . . the other States in the circuit," North Carolina "does not provide a mechanism by which we could certify the question to North Carolina's Supreme Court." *In re McCormick*, 669 F.3d 177, 182 n.\* (4th Cir. 2012).

Even so, we think it unlikely the North Carolina Supreme Court would read the Act as the district attorney suggests. In North Carolina, "[s]tatutory interpretation properly begins with an examination of the plain words of the statute," and "[c]anons of statutory interpretation"—including "constitutional avoidance"—are "only employed when there are two or more reasonable meanings of the statutory language at issue." *JVC Enterprises v. City of Concord*, 855 S.E.2d 158, 161–62 (N.C. 2021) (quotation marks omitted). Here, the "plain words of the statute" reach truthful statements. *Id.* at 161; see *Virginia v.*

8

*American Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988) (stating a federal court may not "rewrite a state law to conform it to constitutional requirements").[6]

Shifting gears, the district attorney asserts that even if the Act reaches some truthful speech, it remains constitutional because any overbreadth is not substantial in relation to the Act's legitimate sweep. We disagree. The district attorney has offered no examples of this Act's "legitimate applications"—much less applications unrelated to speech—nor has she shown any such applications should mitigate our concerns about the law's chilling effects on truthful speech during political campaigns. *Virginia v. Hicks*, 539 U.S. 113, 124 (2003). Under this law, prosecutors need never show—or even allege—a "derogatory" statement was false so long as they contend the speaker acted with reckless disregard of its truth or falsity. The Supreme Court has emphasized "there is no sound principle which can make [a person] liable" for "publish[ing] the truth," and it has announced a constitutional "rule" that "*absolutely prohibits* punishment of truthful criticism" even when such criticism is made with "ill will" or "actual malice." *Garrison*, 379 U.S. at 73, 78 (quotation marks omitted; emphasis added). Nothing more is needed to show this Act is likely unconstitutional.

---

[6] The lack of an express limitation to false statements distinguishes this Act from criminal defamation statutes upheld by other circuits. See *Frese v. Formella*, 53 F.4th 1, 4 (1st Cir. 2022) (upholding statute prohibiting "purposely communicat[ing]" "any information" a speaker "knows to be false *and* knows will tend to expose any other living person to public hatred . . ." (emphasis added)); *Phelps v. Hamilton*, 59 F.3d 1058, 1070–73 (10th Cir. 1995) (upholding statute defining "[c]riminal defamation [as] maliciously communicating . . . *false information* tending to expose another living person to public hatred . . ." (emphasis added)).

9

B.

The Act is likely unconstitutional for a second reason as well. Even assuming the Act reaches only false statements and that *Garrison*'s seeming approval of certain criminal libel statutes remains good law, we would still conclude this Act fails constitutional scrutiny because it draws impermissible content-based distinctions in identifying which speech to criminalize.

The Act does not reach all "derogatory reports" made with "reckless disregard of [their] truth or falsity." N.C. Gen. Stat. § 163-274(a)(9). Instead, it limits its prohibition to statements about a certain subject ("any candidate in any primary or election") of a particular nature or made with a particular intent ("calculated or intended to affect the chances of such candidate for nomination or election"). *Id.* In doing so, the Act runs headlong into *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992).

In *R.A.V.*, the Supreme Court emphasized the distinction between (permissibly) regulating speech "*because of [its] constitutionally proscribable content*" and (impermissibly) using a category of unprotected speech as a "vehicle[] for content discrimination unrelated to [its] distinctively proscribable content." 505 U.S. at 383–84. The Court gave a telling example: "[T]he government may proscribe libel; but it may not make the further content discrimination of proscribing *only* libel critical of the government." *Id.* at 384; see *id.* (noting a city could not enact "an ordinance prohibiting only those legally obscene works that contain criticism of the city government").

True, this Act regulates statements critical of political candidates rather than of the government itself. But the Act still falls within *R.A.V.*'s holding that a State may not

10

"prohibit[] otherwise permitted speech solely on the basis of the subjects the speech addresses." 505 U.S. at 381. Under this statute, speakers may lie with impunity about businesspeople, celebrities, purely private citizens, or even government officials so long as the victim is not currently a "candidate in any primary or election." N.C. Gen. Stat. § 163-274(a)(9). That is textbook content discrimination.

The Act's limitation to statements "calculated or intended to affect the chances of such candidate[s] for nomination or election," § 163-274(a)(9), only compounds the problem. Taken literally, this language means spreading a viral falsehood hoping to end a candidate's marriage is fine but doing the same thing becomes a crime if it is intended (in whole or in part) to doom the person's political campaign.

This is not to say, of course, that laws touching on speech may not have a scienter requirement. But the lines this Act draws have no obvious relation to the reputation-based reasons for allowing States to prohibit libel in the first place.[7] And that, in turn, is why the district attorney's attempt to analogize the Act to 18 U.S.C. § 871, the presidential threat statute, falls flat. Oral Arg. 22:48–23:13. As *R.A.V.* explained, a law prohibiting threats only against the President is constitutional because "the reasons why threats of violence are outside the First Amendment (protecting individuals from the fear of violence, from

---

[7] See *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966) ("law of defamation" justified by the "pervasive and strong interest in preventing and redressing attacks upon reputation"); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 343 (1974) (describing libel laws as reflecting "right to compensation for wrongful hurt to one's reputation"); see also *Garrison*, 379 U.S. at 67–70 (rejecting, at least "[w]here criticism of public officials is concerned," the traditional breach-of-the-peace justifications for criminal libel laws).

11

the disruption that fear engenders, and from the possibility that the threatened violence will occur) have special force when applied to the person of the President." 505 U.S. at 388. The same sort of reasoning explains why a State may outlaw cross burning (and only cross burning) done with the intent to intimidate: "because burning a cross is a particularly virulent form of intimidation." *Virginia v. Black*, 538 U.S. 343, 363 (2003).

Here, in contrast, the district attorney cites no authority suggesting the reasons undergirding libel laws have "special force" when applied to speech about political candidates intended to influence elections. *R.A.V.*, 505 U.S. at 388. In fact, First Amendment doctrine suggests the opposite. See, *e.g.*, *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344 (1974) ("Public officials and public figures . . . have a more realistic opportunity to counteract false statements than private individuals normally enjoy. Private individuals are therefore more vulnerable to injury, and the state interest in protecting them is correspondingly greater." (footnote omitted)).[8] In addition, the justification the district attorney offers to support the Act's content discrimination (preventing campaign fraud and protecting election integrity) is of a different kind, not degree, than the reputation-based

---

[8] See also *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 346 (1995) (describing "[d]iscussion of public issues and debate on the qualifications of candidates" as lying at "the core of the protection afforded by the First Amendment" (quotation marks omitted)); *Buckley v. American Const. Law Found., Inc.*, 525 U.S. 182, 186–87 (1999) (First Amendment concerns are at their "zenith" when a law regulates "core political speech" (quotation marks omitted)); *Garrison*, 379 U.S. at 75 (describing "speech concerning public affairs" as "the essence of self-government" and stating that "'debate on public issues should be uninhibited, robust, and wide-open, and . . . may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials'" (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964))).

justifications underlying libel laws. See *Rosenblatt v. Baer*, 383 U.S. 75, 86 (1966); *Gertz*, 418 U.S. at 343. Finally, the Act's careful limitation to only a subset of derogatory statements to which elected officials may be particularly hostile—those harmful to their own political prospects—raises the "possibility that official suppression of ideas is afoot." *R.A.V.*, 505 U.S. at 390.[9]

As in *R.A.V.*, the Act's limitation to speech addressing only certain topics renders it facially unconstitutional. "The dispositive question in this case . . . is whether content discrimination is reasonably necessary to achieve [North Carolina's] compelling interest[]" in preventing false defamatory speech made with actual malice. *R.A.V.*, 505 U.S. at 395–96. Here, "it plainly is not" because "[a]n ordinance not limited to" speech about current political candidates "would have precisely the same beneficial effect." *Id.* at 396. "In fact the only interest distinctively served by the content limitation is that of displaying the [State's] special hostility towards" defamatory speech against political candidates. *Id.* "That is precisely what the First Amendment forbids." *Id.*

\*   \*   \*

---

[9] If the Act is intended to prevent electoral fraud and preserve election integrity, it draws curious lines. The Act does not prohibit inflating a candidate's credentials or promoting self-aggrandizing falsehoods, nor does it touch knowing falsehoods that undermine the perception of electoral integrity without referencing a particular candidate. As the Supreme Court has recognized, this sort of "underinclusiveness can raise doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Williams-Yulee v. Florida Bar*, 575 U.S. 433, 448 (2015) (quotation marks omitted).

The district court denied plaintiffs' motion for a preliminary injunction based solely on its conclusion that plaintiffs were unlikely to succeed on the merits of their First Amendment claim. Although the parties disagree about whether plaintiffs can satisfy the remaining three *Winter* factors, "we are a court of review, not of first view." *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005). We thus vacate the district court's order and remand for further proceedings consistent with this opinion.

*SO ORDERED*

RUSHING, Circuit Judge, concurring:

I agree that the plaintiffs are likely to succeed on the merits of their First Amendment claim. I therefore join the Court's opinion, which does not address the other preliminary injunction factors—likely irreparable harm, the balance of the equities, and the public interest—instead leaving them for the district court to resolve on remand. *Compare Grimmett v. Freeman*, No. 22-1844, 2022 WL 3696689, at *2 (4th Cir. Aug. 25, 2022) (per curiam), *with id.* at *2–3 (Rushing, J., dissenting).